# Exhibit 21

please do the paf.....:(
thanks
Cindy
%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%
Mon Mar 22, 2010 2:17 pm                                    From: James Fanale

Effective today, AllOne Health will assume responsibility for interim management of Jordan on the Job. AllOne Health, headquartered in Newton, MA are experts in occupational health, worker's compensation and employee health. Barbara Gentile, RN, OHN, will be primarily responsible for AllOne Health's activities at Jordan.

This will allow Peg O'Connor to dedicate her efforts to the full time responsibility of Manager of the Risk Management Program at Jordan Hospital.

Please join me in thanking Peg for her years of service directing the Occupational Health Program and also supporting the staff at Jordan on the Job during this transitional period.

Thank you very much.

-------------------------------------------------------------------------------
SENT TO: #JHE

%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%%

**MO 0089**

**Exhibit 22**



# JORDAN

### H O S P I T A L

February 9, 2010

Margaret O'Connor
20 Soule Road
Plymouth, MA 02360

Dear Peg:

Thank you for taking the time to meet with me and Deb to discuss further the reorganization of your role and responsibilities. This is a transitional period which I anticipate will come to closure very soon. We agree that the staffing in the Variance Management team should be adequate to cover the traditional risk management duties, the complaint and grievance functions presently coordinated by Cathy Dicker, the tracking and pro-active response to variance reporting and the interface with DPH and the BORM. You will work with Cathy Dicker to structure the hours and workflows to accomplish these responsibilities. Deb and I are, of course, always available as necessary.

Peg, hopefully there will be minimal need for direct computer data entry on your part as Cathy is quite adept at this type of work. If, however, you find your data entry skills to be lacking, I would be happy to provide some training for you in Excel or Access, if necessary.

Peg, as I discussed, reports have come to me that your attitude and communication style have been viewed as aggressive and less than collaborative of late. In particular, these observations have been associated with the Occupational Health transition and related matters. I have not had direct knowledge of this, but I share this information with you as constructive feedback in order to help you to emerge from this transition positioned for success at Jordan. If you can bring awareness of these observations to mind in your dealings, it may help you to project a more collaborative attitude. If I can help you in any way to be successful now, or in the future, please let me know. I look forward to working in this new model.

Sincerely,

Harvey Kewaloff, MD, MMM
Vice President and CMO

JH 0044

BCC: Deb Sullivan
     Bill Kirkwood

JH 0045

# Exhibit 23

## Kirkwood, William

| | |
|---|---|
| **From:** | Kowaloff, Harvey |
| **Sent:** | Thursday, February 18, 2010 10:08 AM |
| **To:** | Sullivan, Deb; O'Connor, Peg |
| **Cc:** | Kirkwood, William |
| **Subject:** | Cathy Dicker |

I met with Cathy today to discuss my understanding that she had some issues with some aspects of the reorganization of our area as it impacts her work life. Her only issue is with the concept of moving from Monday – Thursday to a five day , 32 hour week; I explained that this was an idea that originated with me and that I did not at the time know that she had several critical Friday responsibilities that included a part time practice of Reiki and Hypnotherapy which she started when her hours here were reduced from 40 to 32 about a year ago. She is more than willing and in fact eager to transition her duties to the new "variance management" shop that we are setting up and conducts herself professionally in discussing this matter. I asked if she can foresee making some Friday time available for Jordan work and she states that she can most definitely see this happening. I explained to her that we are still in a transitional period as Peg has not yet fully divested the occ health work and that I expected that Peg would shortly develop an outline of the work that needed to be accomplished in variance management and that she and Cathy would then discuss sharing of duties and so forth. I was very clear that we have every expectation that we can design our team to accomplish what we need to do and to aim to meet our personal and professional needs in the process and that we would keep the internal lines of communication open as we develop all this. She left very comfortable that we can get to a satisfactory solution to the problems. Peg and Deb I made it clear to her that the expected lines of communication go from her to Peg and from Peg to you and that this meeting with me was called by me in response to what I had learned about her general anxiety about the changes and she fully understood that this is not the usual pattern for addressing team issues. It was a very positive meeting and I am certain she remains engaged as a high performing professional on our team.

**Harvey Kowaloff, MD, MMM**
**Vice President for Medical Affairs and**
**Clinical Reliability**
**Jordan Hospital**
**275 Sandwich Street**
**Plymouth, MA 02360**
**Phone:508-830-2198**
**Email: hkowaloff@jordanhospital.org**

This message (including any attachments) is confidential and intended solely for the use of the individual or entity to whom it is addressed, and is protected by law. If you are not the intended recipient, please delete the message (including any attachments) and notify the originator that you received the message in error.

JH 0738

**Exhibit 24**

| | |
|---|---|
| **From:** | Kowaloff, Harvey |
| **Sent:** | Thursday, May 13, 2010 4:35 PM |
| **To:** | Sullivan, Deb |
| **Cc:** | Kirkwood, William |
| **Subject:** | RE: Issues list |

Thank you

**Harvey Kowaloff, MD, MMM**

This message (including any attachments) is confidential and intended solely for the use of the individual or entity to whom it is addressed, and is protected by law. If you are not the intended recipient, please delete the message (including any attachments) and notify the originator that you received the message in error.

-----Original Message-----
**From:** Sullivan, Deb
**Sent:** Thursday, May 13, 2010 4:14 PM
**To:** Sullivan, Deb; Kowaloff, Harvey
**Subject:** FW: Issues list


Deborah Sullivan RN MS
Sr. Director Clinical Reliability & PSO
Jordan Hospital,Inc
275 Sandwich Street
Plymouth,Ma 02360
Telephone 508-830-2101
Fax 508-830-1131
dsullivan@jordanhospital.org
-----Original Message-----
**From:** Sullivan, Deb
**Sent:** Wednesday, May 12, 2010 9:32 PM
**To:** Sullivan, Deb
**Subject:** FW: Issues list


**From:** Sullivan, Deb
**Sent:** Wed 5/12/2010 6:16 PM
**To:** Sullivan, Deb
**Subject:** Issues list

**JH 0717**

Harvey as you requested please find listed the major issues that have occurred with Peg's performance.

1. Quality of data presentations- Specimen data presented in a confused inaccurate method to PCA. I met with her several times but presentation at PCA remained unacceptable.
2. Ability to develop corrective action plans- The EMTALA action plan was not acceptable. Donna and I had to revise the complete action plan while DPH was in the hospital.There is no action plan for incorrect specimens

4

coming from doctor's offices. I asked her after the PCA meeting to set up a meeting with you, Dr Bardawil, Hardy, her and me to discuss action plan. This has not been done.

3. RCA competency- RCAs not complete or detailed and jumps to how to fix. Example is RCA on CT scan issue.

4. Work with DPH surveyor- I would expect a RM to deal easily with surveyors. She appeared uncertain and surveyor picked up on this and said she was not confident Peg really knew corrective action plan for EMTALA. Peg had given her the original unacceptable plan.

5. DPH reports- The couple that she was involved with required major corrections or if ND wrote she did not seem to pick up on issues.

6. Work plan for her area not completed.


You know the behavior issues but these have been better after our last behavioral talk with her. Deb

Deborah Sullivan RN MS
Sr. Director Clinical Reliability & PSO
Jordan Hospital,Inc
275 Sandwich Street
Plymouth,Ma 02360
Telephone 508-830-2101
Fax 508-830-1131
dsullivan@jordanhospital.org

JH 0718

# Exhibit 25

| | |
|---|---|
| ... om: | Kowaloff, Harvey |
| ,nt: | Tuesday, December 15, 2009 11:53 AM |
| To: | O'Connor, Peg |
| Cc: | Sullivan, Deb; Kirkwood, William |
| Subject: | RE: Position Description |

Yes you are correct the health system is the focal point for the risk component; my oversight; shows my hospital bias; .

**Harvey Kowaloff, MD, MMM**

This message (including any attachments) is confidential and intended solely for the use of the individual or entity to whom it is addressed, and is protected by law. If you are not the intended recipient, please delete the message (including any attachments) and notify the originator that you received the message in error.

-----Original Message-----
**From:** O'Connor, Peg
**Sent:** Tuesday, December 15, 2009 11:44 AM
**To:** Kowaloff, Harvey
**Cc:** Sullivan, Deb; Kirkwood, William
**Subject:** RE: Position Description

Hi Harvey:
Thank you for this position description. I haven't had an opportunity to study it as yet but I quickly notice that there is no mention of the health system. Who is handling the claims for JPA and AMMI? As a matter of fact today I am investigating a JPA claim and going to Cordage this afternoon to meet with Carrie and obtain the medical record. I was asked by Joe and Jim to do this work, is this part of this job? I also do the risk assessments for the offices of our owned Physicians.
It appears that I am being offered a managerial job after having been a director and it concerns me that there is a need for a health system position. I am not that concerned with titles but if we are setting this up now it needs to be done to meet the needs of the organization. Let's continue to discuss, I would love to hear your thoughts.
Peg

Margaret O'Connor R.N., MMHC, COHN, HRM
Director of Occupational Health/Risk Management
Telephone    508-830-2268
Fax          508-830-2995
Email        poconnor@jordanhospital.org

**From:** Kowaloff, Harvey
**Sent:** Tuesday, December 15, 2009 9:32 AM
**To:** O'Connor, Peg
**Cc:** Sullivan, Deb; Kirkwood, William
**Subject:** Position Description

Peg please review the attached position description describing the role for the Variance Manager which incorporates traditional risk management with related work in regulatory affairs, variance analysis and complaint and grievances. I have asked Bill to review the compensation for this position. Hope to have that shortly. Please let me know before the Christmas weekend if you are interested in this opportunity.

JH 0013

# Exhibit 26

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
JFK Federal Building, Government Center
Room 2275
Boston, Massachusetts 02203



Northeast Consortium/ Division of Survey & Certification

April 23, 2010

Peter Holden, President & CEO
Jordan Hospital Inc.
275 Sandwich Street
Plymouth, Massachusetts 02360

CCN: 22-0060

Dear Mr. Holden:

Section 1865 of the Social Security Act (the Act) and implementing regulations (42 CFR 488.5(a), provide that a hospital accredited by the Joint Commission be "deemed" to meet all Medicare Conditions of Participation with the exception of utilization review. Section 1864 of the Act requires the Secretary of Health and Human Services to conduct a survey on an accredited hospital participating in the Medicare program if there is a substantial allegation of serious deficiency or deficiencies which would, if found to be present, adversely affect the health and safety of patients. If, in the course of the survey, a hospital is found to have significant deficiencies with respect to compliance with the Conditions of Participation, we are required, following timely notification to the accrediting body, to keep the hospital under Medicare State Survey Agency jurisdiction until the hospital is in compliance with all the Conditions of Participation.

We have received a report of deficiencies found by the Massachusetts Department of Health, Division of Health Care Quality (the Massachusetts Medicare/Medicaid State Survey Agency) during the March 30, 2010, substantial allegation survey of your hospital. Based on this report, we find that Jordan Hospital Inc. is not in compliance with all of the requirements for participation in the Medicare program. It was determined that the Medicare Condition of Participation found at 42 CFR 482.24 Special responsibilities of Medicare hospitals in emergency cases was not met. Based upon this finding, your hospital is being placed under State Survey Agency jurisdiction.

A complete listing of all deficiencies found by the State Survey Agency is enclosed. You must submit a plan of correction to this office and to the State Survey Agency within ten days from the receipt of this letter.

The requirement that Jordan Hospital Inc. must submit a plan to correct its Medicare deficiencies does not affect its accreditation, its Medicare payments, or its current status as a participating provider of hospital services in the Medicare program. When Jordan Hospital's plan of correction has been implemented and it has been found to meet all the Medicare Conditions of Participation for hospitals, the State Survey Agency will discontinue its survey jurisdiction.

Under CMS regulations 42 CFR 498.3(d), this notice of findings is an administrative action, not an initial determination by the Secretary, and therefore formal reconsideration and hearing procedures do not apply. Copies of the letter are being forwarded to the State Survey Agency and the Joint Commission. The State survey Agency will contact you shortly to complete its Medicare survey.

Sincerely yours,

/S/

Richard M. Shaw
Branch Chief

Enclosure:

CMS 2567

cc:
CMS
JC
MA S/A

COPY

# Exhibit 27



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Public Health
## Division of Health Care Quality
## 99 Chauncy Street, Boston, MA 02111
## 617-753-8000

**DEVAL L. PATRICK**
GOVERNOR

**TIMOTHY P. MURRAY**
LIEUTENANT GOVERNOR

**JUDYANN BIGBY, MD**
SECRETARY

**JOHN AUERBACH**
COMMISSIONER

# RECEIVED

JUN 1 0 2010

PATIENT CARE
SERVICES

June 7, 2010

Administrator
Jordan Hospital Inc
275 Sandwich Street
Plymouth, MA 02360

Dear Administrator:

As the result of a Medicare inspectional visit to Jordan Hospital Inc completed on May 26, 2010, the deficiencies on the enclosed forms are brought to your attention.

It is requested that you submit an acceptable Plan of Correction for the deficiencies listed to this office within ten (10) days of your receipt of this letter to:

     Elizabeth Solis
     Department of Public Health
     Division of Health Care Quality
     99 Chauncy Street, 11th Floor
     Boston, MA 02111

An acceptable plan of correction must (1) include the month, day, and year a deficiency was, or will be corrected (2) state how the deficiency will be, or has been corrected, (3) indicate how ongoing compliance will be monitored, (4) be completed on the original form as attached, and (5) be signed by the administrator. The plan of correction will be returned if it is not acceptable.

You are advised that in conformance with Public Law 42 USC 1306 (d) (disclosure information) the deficiency letter together with your written plan of correction will be forwarded to the Centers for Medicare and Medicaid Services and will be on file as a public record. If your written plan of correction is not forwarded to this office within the designated time period, the deficiency letter will be forwarded to the above mentioned agency together with a statement that you failed to file such a plan.

Please retain a copy of the Statement of Deficiencies and Plan of Correction for your files. PLEASE TYPE THE PLAN OF CORRECTION. If you have questions concerning this letter, please contact me at (617) 753-8000.

Very truly yours,

*Stephen Corabana RN/mc*

Health Facility Surveyor

Enclosure(s)

cc:  File

**JH 0764**

DPHCQ084

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>275 SANDWICH STREET<br>PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 154 | 482.13(e) USE OF RESTRAINT OR SECLUSION<br><br>Patient Rights: Restraint or Seclusion. All patients have the right to be free from physical or mental abuse, and corporal punishment. All patients have the right to be free from restraint or seclusion, of any form, imposed as a means of coercion, discipline, convenience, or retaliation by staff. Restraint or seclusion may only be imposed to ensure the immediate physical safety of the patient, a staff member, or others and must be discontinued at the earliest possible time.<br><br>This Standard is not met as evidenced by:<br>Based on observation, staff interview and record review, for two patients (#10 and #11), from a total sample of 30 current patients reviewed, the Hospital failed to ensure that restraints were implemented only when based upon a comprehensive assessment that determined the restraint was a necessary intervention to protect a patient from harm due to a medical condition or symptom; and, that the least restrictive device was used to restrain the patient for the least amount of time.<br><br>The findings are:<br><br>1. Patient #10 had been admitted from a long term care facility secondary to combative and aggressive behavior on 5/17/10. The patient had a history of dementia and hypertension and was diagnosed on admission to have a urinary tract infection.<br><br>Review of the medical record revealed the patient arrived at the emergency room, prior to the patient's admission to the hospital's geriatric psychiatric unit ("Senior Behavioral Health Center") on 5/17/10 at 1520. The emergency room progress note stated the security staff | A 154 | **JH 0765** | |

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 220060 | A. BUILDING _____ B. WING _____ | | 05/26/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| JORDAN HOSPITAL INC | 275 SANDWICH STREET PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 154 | Continued From page 1 | A 154 | | |

A 154 — Continued From page 1

assisted the staff to keep the patient from striking out, hitting and biting. The patient was administered 1 milligrams of Ativan (anti-anxiety) intramuscularly. The note indicated that the patient remained on one to one and quieted after administration of the drug. At 1800, three hours after the administration of the Ativan, the nurse administered an additional 0.5 milligrams of Ativan for aggressive behavior and then administered 0.5 milligrams of Ativan intravenously at 1845. At 2100, the patient was transported with two security staff to the behavioral unit. On arrival the security staff reported the patient had been agitated in the elevator. The nurse called the physician and obtained a STAT (immediate) physician's order to administer 5 milligrams of the antipsychotic medication Zyprexa, to be given intramuscular.

Review of the medical record revealed physician orders for the administration of medications for this patient was to be used as a restriction to manage the patient's behavior. There was no evidence a comprehensive assessment had determined that this patient required chemical restraints; nor, that the administration was the least restrictive interventions that could be utilized.

2. Patient #11 had been admitted to the hospital on May 4, 2010. The patient had a history of ETOH (alcohol) abuse and was admitted with seizures related to alcohol withdrawal. The patient was treated for alcohol detoxification program and the staff followed the ETOH withdrawal protocol. The protocol included assessments by the nursing staff, a bedside assessment by the physician, and the administration of benzodiazepines per a schedule. The patient was taken off the

JH 0766

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:

220060 | (X2) MULTIPLE CONSTRUCTION

A. BUILDING _____

B. WING _____ | (X3) DATE SURVEY COMPLETED

05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER

JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE

275 SANDWICH STREET
PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 154 | Continued From page 2
treatment on 5/14/10, following an evaluation by the psychiatrist.

Review of the medical record revealed the patient had been restrained daily with the two soft wrist restraints since admission. A generic form was signed daily by the medical staff indicating the device was necessary for the patient. On 5/17/10 at 2307, the nurse documented the patient was swinging his legs over the siderails, sliding self to the end of the bed. The patient remained with bilateral soft wrist restraints in place and staff frequently checked the patient for safety.

The physician ordered that the alcohol detoxification program be started again even though the patient had completed alcohol withdrawal on 5/14/10. The patient remained on the alcohol withdrawal treatment plan, even though there was no comprehensive assessment by the physician (per protocol) until 5/20/10 in order to achieve sedation. On 5/18/10, the nurse documented the patient was administered 2 milligrams of Ativan, five times via an IV between 0041 and 0216 and the treatment goal was to achieve sedation.

On 5/20/10 at 1 PM, the patient was observed in bed, restrained with two soft wrist restraint that were tied to two full side rails. A staff member was assigned for one to one observation. The staff was observed sitting in a chair outside the patient's room reading. On the second day of survey, 5/21/10 at 1:30 PM, the patient was again observed in bed with two soft wrist restraints tied to two full side rails. The one to one sitter was again, sitting outside the patient's room. The patient was awake and was observed moving around the bed. The bed was raised to the highest position. | A 154 | | |

JH 0767

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| JORDAN HOSPITAL INC | 275 SANDWICH STREET<br>PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 154 | Continued From page 3<br><br>Review of the medical record revealed the patient had been restrained daily with two soft wrist restraints since admission. A generic form was signed daily by the medical staff indicating the device was necessary for the patient. On 5/20/10, four point leather restraints were applied at 4 AM, a physician order was not obtained until 8 AM.<br><br>Interview with the 2 East Unit Nurse manager on 5/24/10, stated the bilateral wrist restraints, the chemical restraints and the reinstatement of the detoxification program were implemented as restraints. There was no evidence a comprehensive assessment had determined that this patient required these restraint devices daily or episodically to prevent the patient from harm; nor that the devices were the least restrictive intervention that could be utilized. | A 154 | | |
| A 165 | 482.13(e)(3) PATIENT RIGHTS: RESTRAINT OR SECLUSION<br><br>The type or technique of restraint or seclusion used must be the least restrictive intervention that will be effective to protect the patient or others from harm.<br><br>This Standard is not met as evidenced by:<br>Based on observations, staff interviews and record reviews, for 2 current patients reviewed with restraint devices, (#10, and #11) from a total sample of 30 current patients reviewed, the Hospital failed to ensure the least restrictive device was utilized for the least amount of time. The findings are: | A 165 | | |

JH 0768

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>**JORDAN HOSPITAL INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**275 SANDWICH STREET**<br>**PLYMOUTH, MA 02360** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 165 | Continued From page 4<br>The findings are:<br><br>1. Patient #10 had been admitted from a long term care facility secondary to combative and aggressive behavior on 5/17/10. The patient had a history of dementia and hypertension and was diagnosed on admission to have a urinary tract infection and antibiotics were initiated.<br><br>Review of the medical record revealed the elderly patient was chemically restrained in the emergency room on 5/17/10 and on arrival to the transfer to the hospital's geriatric psychiatric unit ("Senior Behavioral Health Center"). The emergency room progress note stated the security staff assisted the staff to keep the patient from striking out, hitting and biting. The patient was administered 1 milligrams of Ativan (anti-anxiety) intra muscular. The note indicated that the patient remained on one to one and quieted after administration of the drug. At 1800, three hours after the administration of the Ativan, the nurse administered an additional 0.5 milligrams of the Ativan for aggressive behavior and then administered 0.5 milligrams of Ativan via an intra venous at 1845. At 2100, the patient was transported with two security staff to the behavioral unit. On arrival the security staff reported the patient had been agitated in the elevator. The nurse called the physician and obtained a STAT (immediate) physician's order to administer 5 milligrams of the antipsychotic medication Zyprexa, to be given intramuscular.<br><br>There was no evidence a comprehensive assessment had determined that this patient required chemical restraints; nor, that the administration were the least restrictive interventions that could be utilized. | A 165 | | |

FGRP1·

JH 0769

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| JORDAN HOSPITAL INC | 275 SANDWICH STREET PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 165 | Continued From page 5 | A 165 | | |
| | 2. Patient #11 had been admitted to the hospital on May 4, 2010. The patient had a history of ETOH (alcohol) abuse and was admitted with seizures related to alcohol withdrawal. The patient was treated for alcohol detoxification program and the staff followed the ETOH withdrawal protocol. The protocol included assessments by the nursing staff, a bedside assessment by the physician and the administration of benzodiazepines per a schedule. The patient was taken off the treatment on 5/14/10, following an evaluation by the psychiatrist. | | | |
| | Review of the medical record revealed the patient had been restrained daily with the two soft wrist restraints since admission. A generic form was signed daily by the medical staff indicating the device was necessary for the patient. On 5/17/10 at 2307, the nurse documented the patient was swinging his legs over the siderails, sliding self to the end of the bed. The patient remained with bilateral soft restraints in place and staff frequently checked the patient for safety. The physician ordered to restart the detoxification program even though the patient had completed alcohol withdrawal on 5/14/10. | | | |
| | The patient remained on the alcohol withdrawal treatment plan, even though there was no comprehensive assessment by the physician (per protocol) until 5/20/10 in order to achieve sedation. On 5/18/10, the nurse documented the patient was administered 2 milligrams of Ativan, five times via an IV between 0041 and 0216 and the treatment achieved sedation. | | | |
| | On 5/20/10 at 1 PM, the patient was observed in bed, restrained with two soft wrist restraint that were tied to two full side rails. A staff was | | | |

JH 0770

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>275 SANDWICH STREET<br>PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 165 | Continued From page 6<br><br>assigned for one to one observation. The staff was observed sitting in a chair outside the patients room reading. On the second day of survey, 5/21/10 at 1:30 PM, the patient was again observed in bed with two soft wrist restraints tied to two full side rails. The one to one sitter, again was sitting outside the patient's room. The patient was awake and was observed moving around the bed. The bed was raised to the highest position.<br><br>Review of the medical record revealed the patient had been restrained daily with the two soft wrist restraints since admission. A generic form was signed daily by the medical staff indicating the device was necessary for the patient. On 5/20/10, four point leather restraints were applied at 4 AM, a physician order was not obtained until 8 AM.<br><br>Interview with the 2 East Unit Nurse manager, on 5/24/10, stated the bilateral wrist restraints, the chemical restraints and the reinstatement of the detoxification program were implemented as restraints. There was no evidence a comprehensive assessment had determined that the devices were the least restrictive intervention that could be utilized. | A 165 | | |
| A 398 | 482.23(b)(6) SUPERVISION OF CONTRACT STAFF<br><br>Non-employee licensed nurses who are working in the hospital must adhere to the policies and procedures of the hospital. The director of nursing service must provide for the adequate supervision and evaluation of the clinical activities of non-employee nursing personnel which occur | A 398 | | |

JH 0771

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE 275 SANDWICH STREET PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 398 | Continued From page 7 within the responsibility of the nursing services.

This Standard is not met as evidenced by: Based on review of personnel files and staff interview, the Hospital failed to ensure the clinical activities of 6 non-employee licensed dialysis nurses were evaluated by a qualified hospital-employed RN (Registered Nurse) for adherence to the policies and procedures of the Hospital.

The findings are:

Review of six dialysis nurses employee files on 5/26/10 contained evaluations which had been completed by the Dialysis company's supervisory staff. There was no evidence the Hospital RN assigned to supervision of these contracted services had participated in these evaluations.

The CNO (Chief Nursing Officer) confirmed there was an RN who was assigned to review these services for quality. However, the CNO acknowledged this RN did not participate in the evaluation and confirmed there was no evaluation of the nurses adherence to the Hospital's policies and procedures. | A 398 | *Dept to work c̄ [illegible] on Generic Contract Staff Eval* | |
| A 405 | 482.23(c)(1) ADMINISTRATION OF DRUGS

All drugs and biologicals must be administered by, or under supervision of, nursing or other personnel in accordance with Federal and State laws and regulations, including applicable licensing requirements, and in accordance with the approved medical staff policies and procedures. | A 405 | | |

JH 0772

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE 275 SANDWICH STREET PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 405 | Continued From page 8

This Standard is not met as evidenced by:
Based on clinical record review and interview with nursing staff and nursing administration, hospital staff failed to administer medications to 3 identified patients (#14, 18 & 19) of a sample of 30, in a manner to ensure that the prescribed medications were administered as ordered.

The findings are:

1. Patient #14 was admitted to the hospital with diagnoses that included acute renal failure, fluid volume deficit secondary to bradycardia, diabetes, generalized weakness with increased confusion.

Due to the patient's diagnosis, the facility's Heparin Protocol was implemented on 5/8/10. Review of the Heparin Infusion Record and physician's order for patient #14 revealed that on 5/9/10 at 1430, the patient's PTT value was documented at 58 and the nurse administered 1400 units per hour of Heparin as indicated in the protocol. The protocol also indicated that any patient with a PTT between 32-59 should receive a bolus dose of Heparin.

Further record review and interview with the unit director 3 on 5/26/10, confirmed that the patient did not receive the bolus dose of Heparin as per the facility Heparin Protocol. The unit director further indicated that this would be considered a medication error.

2. Patient #18 was admitted to the hospital on 5/17/10 with a primary diagnosis of pulmonary embolus, deep vein thrombosis, prostate cancer and early Alzheimer's disease.

On 5/17/10 at 1915 the physician ordered a | A 405 | | |

JH 0773

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| JORDAN HOSPITAL INC | 275 SANDWICH STREET PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 405 | Continued From page 9 Heparin bolus to be administered based on the Hospital's protocol for weight-based Heparin Dosing. According to the protocol the nurse was to calculate the dose based on 50 units per kilogram. The orders noted to round to the nearest hundred units. The nurse calculated the dose to be 4250 units, based on the patient's weight of 85 kilograms, and rounded down to 4200 units which was documented as administered at 1925.

The Unit Nursing Director S reviewed the medication record with the surveyor and acknowledged the amount administered was incorrect. The Nursing Director also spoke to two other nurses who were present regarding the dose they would have administered. One nurse commented it was basic math and she would have rounded up and administered 4300 units. The other nurse stated she would refer to the hospital's weight based Heparin dosing chart. Review of the chart revealed the dose for 84 kilograms was 4200 units and the dose for 86 kilograms was 4300 units. There were no directions on the chart for 85 kilograms.

On 5/19/10 these findings were discussed with the Clinical Pharmacist who stated the nurse should have rounded up. The Clinical Pharmacist revised the physician's order form and the weight based Heparin dosing chart to provide clear direction for dose calculation.

3. Patient #19 was admitted to the hospital on 5/11/10 with diagnoses of volume overload secondary to portal hypertension. The patient also had diagnoses of Hepatitis C and alcohol and intravenous drug abuse.

Clinical record review revealed the patient did not | A 405 | | |

JH 0774

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE 275 SANDWICH STREET PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 405 | Continued From page 10 <br><br> receive medications as prescribed. The findings are as follows: <br><br> a) Review of the clinical record on 5/21/10, revealed a physician's order on 5/12/10 at 8 A.M. for Thiamine 100 milligrams intravenously, single order, to be administered as soon as possible. At 1530 on that day the nurse obtained a physician's telephone order to change the intravenous Thiamine to intramuscular injection and to also add Thiamine 100 milligrams by mouth for one dose. <br><br> Interview with the nurse A who obtained the telephone order revealed when the patient was transferred from the emergency department holding unit, she noted the Thiamine ordered at 8 A.M. had not been administered. The nurse explained that intravenous Thiamine could only be administered in critical care units so it was necessary to change the route to intramuscular and also to add a dose by mouth to obtain the same effect as an intravenous dose. <br><br> The Emergency Department Nursing Director stated the patient was in the holding unit from 1:10 A.M. until to 2 P.M. on 5/12/10 when he was transferred to the medical surgical unit. The Nursing Director stated a nurse from an inpatient unit was caring for the patient at 8 A.M. and did not administer the intravenous Thiamine. There was no evidence this order had been transcribed or acknowledged while the patient was in the holding unit. <br><br> b) On 5/21/10 at 2:30 P.M., the physician ordered 1 unit of packed red blood cells to be transfused and Lasix 20 milligrams post transfusion times one dose. | A 405 | | |

JH 0775

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br><br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**JORDAN HOSPITAL INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>**275 SANDWICH STREET**<br>**PLYMOUTH, MA 02360** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 405 | Continued From page 11<br><br>Review of the blood transfusion record revealed the transfusion began at 2215 on 5/21/10 and ended at 0115 on 5/22/10. The EMAR (electronic medication administration record) revealed the Lasix was administered at 5 A.M. On 5/26/10 at 9:45 A.M., the Unit Nursing Director reviewed these findings with the surveyor and stated she was unclear as to the reason for the delay in administration and contacted the nurse who had administered the Lasix.<br><br>The Nursing Director stated the nurse had not received a change of shift report that she needed to administer the Lasix post transfusion and had noted on the EMAR it had been "yellowed out". When she was reviewing physicians' orders at approximately 5 A.M. she noted the order for Lasix and administered the medication at that time.<br><br>Interview with the Pharmacy Director, in the presence of the CNO, revealed for one time medication orders the pharmacist would enter a stop time and date. For this medication, the stop time was 2359 and therefore the medication became discontinued on the EMAR and did not carry over to the next day. The CNO expressed concern regarding this process and acknowledged there could be other instances that medications would be omitted. | A 405 | | |
| A 410 | 482.23(c)(4) HOSPITAL PROCEDURES<br><br>There must be a hospital procedure for reporting transfusion reactions, adverse drug reactions, and errors in administration of drugs.<br><br>This Standard is not met as evidenced by: | A 410 | | |

JH 0776

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>**JORDAN HOSPITAL INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**275 SANDWICH STREET**<br>**PLYMOUTH, MA 02360** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 410 | Continued From page 12<br><br>Based on record review and staff interview, the hospital failed to report a medication error through its' hospital reporting procedures for 3 (#14, 18 & 19), of a total sample of 30.<br><br>Findings included:<br><br>1. Patient #14 was admitted to the hospital with diagnoses that included acute renal failure, fluid volume deficit secondary to bradycardia, diabetes, generalized weakness with increased confusion.<br><br>Record review on 5/24/10 revealed that patient #14 did not receive a bolus dose of Heparin on 5/9/10 at 1430, per the facility policy. Interview with unit director 3 on 5/26/10 confirmed that the the missed dose of Heparin would be considered a medication error.<br><br>On 5/24/10, the unit director generated a medication error report that would be sent to various department heads for further investigation. The facility did not identify the error when it occurred on 5/9/10, rather it was identified by the surveyor on 5/24/10.<br><br>2. Patient #18 was admitted to the hospital on 5/17/10 with a primary diagnosis of pulmonary embolus, deep vein thrombosis, prostate cancer and early Alzheimer's disease.<br><br>On 5/17/10 at 1915 the physician ordered a Heparin bolus to be administered based on the Hospital's protocol for weight-based Heparin Dosing. According to the protocol the nurse was to calculate the dose based on 50 units per kilogram. The orders noted to round to the nearest hundred units. The nurse calculated the dose to be 4250 units, based on the patient's | A 410 | | |

JH 0777

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
| JORDAN HOSPITAL INC | 275 SANDWICH STREET PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG. | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 410 | Continued From page 13

weight of 85 kilograms, and rounded down to 4200 units which was documented as administered at 1925.

The Unit Nursing Director reviewed the medication record with the surveyor and acknowledged the amount administered was incorrect.   On 5/19/10 these findings were discussed with the Clinical Pharmacist who stated the nurse should have rounded up.

3.  Patient #19 was admitted to the hospital on 5/11/10 with diagnoses of volume overload secondary to portal hypertension.  The patient also had diagnoses of Hepatitis C and alcohol and intravenous drug abuse.

Clinical record review revealed the patient did not receive medications as prescribed.  The findings are as follows:

a)  Review of the clinical record on 5/21/10, revealed a physician's order on 5/12/10 at 8 A.M. for Thiamine 100 milligrams intravenously, single order, to be administered as soon as possible.

The Emergency Department Nursing Director stated the patient was in the holding unit from 1:10 A.M. until to 2 P.M. on 5/12/10 when he was transferred to the medical surgical unit.  The Nursing Director stated a nurse from an inpatient unit was caring for the patient at 8 A.M. and did not administer the intravenous Thiamine.  There was no evidence this order had been transcribed or acknowledged while the patient was in the holding unit.

b) On 5/21/10 at 2:30 P.M., the physician ordered 1 unit of packed red blood cells to be transfused and Lasix 20 milligrams post transfusion times | A 410 | | |

JH 0778

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>JORDAN HOSPITAL INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>275 SANDWICH STREET<br>PLYMOUTH, MA 02360 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 410 | Continued From page 14<br>one dose.<br><br>Review of the blood transfusion record revealed the Lasix was not administered until 5 A.M. approximately four hours after the completion of the transfusion.<br><br>The Nursing Director stated the nurse had not received in change of shift report that she needed to administer the Lasix post transfusion and had noted on the EMAR it had been "yellowed out". When she was reviewing physicians' orders at approximately 5 A.M. she noted the order for Lasix and administered the medication at that time.<br><br>4. Review of the Hospital's medication event reporting policy noted an "Intercept" as a potential adverse drug event. The definition was of "Intercept" was any error related to ordering, preparation, transcription, dispensing, education, monitoring or administration of a medication that was intercepted prior to reaching the patient. The policy also noted a medication error as any error related to ordering, preparation, transcription, dispensing, education, monitoring or administration of a medication that reaches the patient. Additionally, the policy noted that nursing was required to report the intercepts as all other medication events are reported.<br><br>The Director of Pharmacy on 5/26/10 stated the Hospital had recently changed the computer system used for medication event reporting and had seen an increase in the reporting of potential and actual errors however, these errors were not entered into the system. | A 410 | use this in PReurision |  |

JH 0779

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 220060 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| JORDAN HOSPITAL INC | 275 SANDWICH STREET PLYMOUTH, MA 02360 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 505 A 505 | Continued From page 15 482.25(b)(3) UNUSABLE DRUGS NOT USED Outdated, mislabeled, or otherwise unusable drugs and biologicals must not be available for patient use. This Standard is not met as evidenced by: The facility failed to remove outdated and beyond use drugs and biologicals from patient areas. Findings included: 1. On 5/20/10 in the OBS unit at 2 PM the surveyor observed in the medication refrigerator an open vial of Tuberculin PPD (tuberculin purified protein derivative injection used to test for tuberculous) that was dated by staff 4/11/10 when first used. The manufacturer states that the vial should be discarded after 30 days. The open and dated vial was beyond use date (out of date). This was confirmed with the Director of Pharmacy. 2. On 5/20/10 in the 2 East A Medication Room at 2:15 PM the surveyor observed two bottles of Medisense Glucose Control Solution that were dated when first opened. The open "High" Control Solution was dated 12/15/09 and the "Low" Control Solution was dated 12/18/09. The manufacturer states that the bottle should be discarded after 90 days. The open and dated bottles were beyond use date (out of date). This was confirmed with the Director of Pharmacy. 3. On 5/20/10 in the 2 East B Nursing Area at 2:30 PM the surveyor observed two open bottles of Medisense Glucose Control Solution. The open "High" Control Solution was dated to expire on 3/10/10, and the "Low" Control Solution was not dated. The manufacturer states that the bottle should be discarded 90 days after first opened. | A 505 A 505 | | |

JH 0780

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **220060** | A. BUILDING _____ B. WING _____ | | **05/26/2010** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **JORDAN HOSPITAL INC** | **275 SANDWICH STREET** **PLYMOUTH, MA 02360** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 505 | Continued From page 16 | A 505 | | |
| | The open and not dated bottle is considered beyond use date (out of date). The bottle marked with an expiration date of 3/10/10 was out of date. This was confirmed with the Director of Pharmacy. | | | |
| | 4. On 5/21/10 in the Behavioral Health Unit at 8:55 AM the surveyor observed two open bottles of Medisense Glucose Control Solution that were not dated by staff when first opened. The open "High" Control Solution and the "Low" Control Solution were not dated. The manufacturer states that the bottle should be discarded 90 days after it is opened. The open and not dated bottles are considered beyond use date (out of date). This was confirmed with the Director of Pharmacy. | | | |
| A 749 | 482.42(a)(1) INFECTION CONTROL OFFICER RESPONSIBILITIES | A 749 | | |
| | The infection control officer or officers must develop a system for identifying, reporting, investigating, and controlling infections and communicable diseases of patients and personnel. | | | |
| | This Standard is not met as evidenced by: Based on review of personnel files and staff interview, the Hospital failed to ensure the system for identifying tuberculosis was implemented for 19 of 23 employees. | | | |
| | The findings are: | | | |
| | On 5/26/10 during review of personnel files, it was noted that 19 of 23 employees had not been screened annually for tuberculosis as per hospital policy. This function was the responsibility of | | | |

JH 0781

Printed: 06/09/2010
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>220060 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/26/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>**JORDAN HOSPITAL INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**275 SANDWICH STREET**<br>**PLYMOUTH, MA 02360** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| A 749 | Continued From page 17<br>Occupational Health which was located off-site.<br><br>Review of the Hospital's 2010 Infection Prevention and Control Plan revealed that evaluation of Employee Health was included in the plan. However, review of health records revealed some of these employees had not been screened for tuberculosis as far back as 2005. For example, the Director of Medical Records was last screened on 2/28/05, the Nursing Manager on 3 South had not been tested since 6/30/07 and the 3 East B Nurse Manager was last screened on 8/20/08.<br><br>These findings were reviewed with the CNO (Chief Nursing Officer) on 5/26/10 who acknowledged she needed to be tested due to her last screen was done on 1/21/09. She stated that newly hired employees were screened however annual screenings were not done according to Hospital policy. The CNO stated this was a program that was being reviewed and revised for all employee health services to be on-site. | A 749 | | |

JH 0782

# Exhibit 28



JORDAN

H O S P I T A L

March 22, 2010

Margaret O'Connor
Manager, Risk Management
Jordan Hospital
275 Sandwich Street
Plymouth, MA 02360

Dear Peg:

Thank you for meeting with Deb and me to discuss some problems that have surfaced of late in the transitioning of duties to the new Variance Management Department. There have been a few examples of misunderstanding as to accountabilities for some of the work that needed to be accomplished. We acknowledged that the transition out of Occupational Health added a layer of complexity to the roll out of the new Variance Management model. However, I also believe that these are symptomatic of other issues that need to be resolved of an operational nature. Clearly, there needs to be a high level of performance and clarity of accountabilities throughout the Clinical Reliability team and beyond in the larger leadership team.

We discussed the importance of you and Deb reviewing the work plans and assignments that will govern how you and Cathy Dicker staff the Variance Management team and who will be responsible for which functions. Neither Deb nor I was aware that you had completed this plan a while ago, as gaining clarity and a shared understanding of how the work will get done should help to minimize conflict around roles and responsibilities that have occurred recently. It was important to have that plan in place and might have helped in avoiding some of the misunderstandings and conflicts that have occurred lately. I therefore have asked that you meet with Deb as soon as possible to review and revise the plan in order to be sure that it is both efficient and effective in delivering the goals of the departmental reorganization.

I shared with you that there is a perception among members of the leadership team that you are angry about recent organizational changes which manifests as a passive aggressive and defensive posture in some of your interactions. You have made comments in our meetings suggesting that you feel you have not been given a fair chance to be successful. I want to stress the fact that the we all agreed that the new model has

**JH 0090**

been very adequately staffed with Cathy Dicker's professional talents adding considerable new capacity to the former model that relied on a less capable staff support. On a more general basis, we were clear and in agreement that the expectation at Jordan Hospital is that all leaders are collaborative, responsive and take initiative in all situations. Specifically, leaders are expected to seek one another out and to freely share information, plans and ideas and that the flow of exchange is a two-way process between leaders and their reports. Leaders also are expected to take initiative in resolving problems and promoting the effectiveness of their teams. Both Deb and I try to demonstrate these qualities, and I can assure you that you will be accorded nothing less as a member of the leadership team. If you feel you are not being treated fairly and with respect, I ask that you speak directly with me. By the same token, if your behavior or management style does not comport with these values, I am concerned that you could not continue in the Variance Management position at Jordan Hospital and be effective, nor could you be personally happy and professionally fulfilled.

Peg, I believe you are capable of making this program highly effective. Both Deb and I are prepared to provide the technical support to enable you to be successful. With the strain of the Occupational Health transition behind you, I am optimistic that things will work smoothly and look forward to having you on a high performing team. I urge you to be open and enthusiastic in asking questions and learning and seeking help as necessary.

Sincerely,

*Harvey Kowaloff MD*

Harvey Kowaloff, MD, MMM
Vice President and
Chief Medical Officer

JH 0091

# Exhibit 29



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Public Health
## Division of Health Care Quality
99 Chauncy Street, 2nd Floor, Boston, MA 02111
617-753-8000

RECEIVED
APR 29 REC'D
ADMINISTRATION

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

JUDYANN BIGBY, MD
SECRETARY

JOHN AUERBACH
COMMISSIONER

April 27, 2010

Peter Holden
President & CEO
JORDAN HOSPITAL
275 SANDWICH STREET
PLYMOUTH, MA 02360

RE: Complaint #10-0297

Dear Mr. Holden:

As a result of an on-site EMTALA investigation conducted by the Department of
Public Health, Division of Health Care Quality (the Department), at the JORDAN
HOSPITAL (the Hospital), the Department determined that additional deficiencies
were found to exist at your facility.

STATEMENT OF DEFICIENCIES FORM CMS 2567

Enclosed is a statement of deficiency generated as a result of the on-site
survey dated March 30, 2010. All references to regulatory requirements in the
enclosure and in this letter are found in Title 42, Code of Federal Regulations.
Due to the nature of the cited deficiencies, the Facility should initiate
immediate corrective action. Also enclosed is a copy of the Department's
investigation report on these matters.

ENFORCEMENT UNDER FEDERAL REGULATIONS

Please refer to the CMS letter dated April 23, 2010 regarding the conditional
level, EMTALA deficiency and actions required by CMS.

continued.......

JH 0141

Facility: JORDAN HOSPITAL
           275 SANDWICH STREET
           PLYMOUTH, MA, 02360

Date Received:     03/22/2010

Date Investigated:   03/26/2010, 03/29/2010, 03/30/2010

---

## A. INVESTIGATORY STEPS:

### 1. PERSONS INTERVIEWED

Staff RN #1
Certified Nurse Midwife #1
Obstetrician #2 (from Hospital #2)
ED Director of Nursing
ED Clinical Leader
Vice President of Nursing/CNO
Risk Manager

Staff RN #2 (from Hospital #2)
Charge Nurse #1
Inpatient Director of Nursing
Director of MCH Services
Obstetrician #4
Sr. Dir. of Clinical Reliability
Chief Medical Officer

### 2. RECORDS REVIEWED

Medical Records
Medical Records
Medical Records
Medical Record
Birth Center Policies/Procedures
Hospital Policy
Emergency Department Log
Medical-Dental Staff Bylaws
Meeting Minutes
Credential Files
Transfer Consent Form
QA/PI Data & Reports
Corrective Action Plan

Medical Records
Medical Records
Medical Records
ED Policy/Procedure
Hospital Policies/Procedures
Obstetric Department Log
Medical Staff Roster
Medical-Dental Staff Rules & Regs
Physician On-Call Lists
Personnel Files
QA/PI Plan
Hospital Internal Investigation

JH 0143

## 3. PHYSICAL EVIDENCE REVIEWED

Tour of Emergency Department          Tour of Obstetric Department

## B. ISSUES FOR INVESTIGATION

1. SYNOPSIS: An Emergency Medical Treatment and Labor Act (EMTALA) Survey was conducted at the request of the Centers for Medicare and Medicaid Services following receipt of reports indicating the Hospital may have transferred a patient in violation of EMTALA regulations.

   The EMTALA Survey determined a patient had an emergency medical condition (EMC) and was transferred from the Hospital in violation of EMTALA regulations related to the provision of necessary stabilization treatment, physician certification and the provision of medical record information (Patient #1). The Survey also determined: Hospital bylaws, rules and regulations or other document approved by the governing body did not specify the individuals qualified to conduct medical screening examinations; EMTALA violations related to physician certification concerning the transfer of 3 other patients with EMCs from the Hospital (Patients #4, #7 and #15) and; the Hospital had conducted an Internal Investigation concerning Patient #1's care and transfer.

   Deficiencies were cited.

2. ISSUES:     1. Emergency Care Hospital Dumping

## C. ISSUE # 1

Emergency Care Hospital Dumping                    **JH 0144**

BRIEF EXPLANATION OF FINDINGS

An Emergency Medical Treatment and Labor Act (EMTALA) Survey was conducted at the request of the Centers for Medicare and Medicaid Services following receipt of reports indicating the Hospital may have transferred a patient in violation of EMTALA regulations.

The EMTALA Survey determined a patient had an emergency medical condition (EMC) and was transferred from the Hospital in violation of EMTALA regulations related to the provision of necessary stabilization treatment,

ENFORCEMENT UNDER STATE LICENSING REGULATIONS/PLAN OF CORRECTION

State regulations (105 CMR 130.200) incorporate by reference the federal
Conditions of Participation for hospitals. Therefore, the deficiencies cited
constitute a violation of state licensure regulations applicable to a hospital.
As a result, you must submit a written plan of correction which sets forth for
each deficiency, specific corrective steps to be taken, a timetable for such
steps, and the date by which compliance shall be achieved. You must submit your
plan within ten (10) days of receipt of this statement of deficiencies to:

> Mr. Lee Berryman
> Enforcement Director
> Department of Public Health
> Division of Health Care Quality, (DHCQ),
> 99 Chauncy Street, 2nd Floor
> Boston, MA 02111

PENALTIES AND ENFORCEMENT:

In accordance with Massachusetts General Laws Chapter 111, Section 56 and 105
CMR 130.130, you are hereby notified that failure to comply with licensing
regulations promulgated by the Department under its licensure authority may
result in a revocation of your license, or fines in the amount of $500 per day
per offense for the first offense, or $1,000 per day per offense for subsequent
offenses, for each day that any such violation shall continue after your being
notified of such by the Department. The Department will review this matter
after receipt of your plan of correction and determine if enforcement action is
warranted at such time.

If you have any questions concerning this letter, please contact me at the
Complaint Unit at (617) 753-8150.

Sincerely,

Lillian V. Jette, RN
Manager
Hospital Complaint Unit

LVJ/compreg
Enclosures - 2

cc: Margaret O'Connor, Risk Manager
    Jill Mazzola, Assistant Director, Survey Operations
    Lee Berryman

JH 0142

Facility: JORDAN HOSPITAL

physician certification and the provision of medical record information
(Patient #1). The Survey also determined: Hospital bylaws, rules and
regulations or other document approved by the governing body did not
specify the individuals qualified to conduct medical screening
examinations; EMTALA violations related to physician certification
concerning the transfer of 3 other patients with EMCs from the Hospital
(Patients #4, #7 and #15); the Hospital had conducted an Internal
Investigation concerning Patient #1's care and transfer and had identified
Patient care issues; a Corrective Action Plan related to the Hospital
Internal Investigation was formulated and; the Corrective Action Plan was
in various stages of development and implementation.

The issues identified through the Hospital Internal Investigation related
to Patient #1's care and transfer included that: Certified Nurse Midwife
(CNM) #1 practiced outside of her scope of practice and the Hospital's
policy titled "Privileges: Certified Nurse Midwife" and did not notify the
On-Call Obstetrician (or any other physician) of the Patient's arrival,
clinical status or need for transfer; other nursing staff involved in the
Patient's care did not recognize that CNM #1 was practicing outside of her
scope of practice/Hospital policy and therefore did not take corrective
action; CNM #1 performed an inadequate Patient evaluation and made a
rushed diagnosis without considering the differential (all
possible/probable diagnoses based on the patient's symptoms, examination
and history); the Patient and fetuses were not appropriately monitored
prior to transfer; an obstetrician did not evaluate the Patient prior to
transfer/arrange the transfer; calls and messages left to/for the On-Call
Obstetrician were not placed/delivered with appropriate urgency; concern
regarding a delay in reaching the On-Call Obstetrician was not addressed
through utilization of the Birth Center's policy/procedure titled "Chain
of Command"; a cervical exam was not performed immediately prior to the
Patient's transfer; Hospital staff did not have a good awareness and/or
understanding of EMTALA regulations and; that there were documentation
issues related to Patient transport and the documentation of the risks and
benefits of transfer.

VALIDITY: Valid

D. RECOMMENDATIONS/COMMENTS

# Exhibit 30

This message is to notify all staff that Peg O'Connor has left Jordan Hospital. Peg
served for many years as the hospital risk manager responsible for claims and internal
variance reporting functions in addition to her role overseeing the Occupational and
Employee Health Services. Until a replacement is found for risk management, all variance
reports should be sent to Deb Sullivan, Director Clinical Reliability and Patient Safety.

Harvey Kowaloff, MD, MMM
Vice President for Medical Affairs and
Clinical Reliability

----------------------------------------------------------------------------------

SENT TO: #JHE, KIMBERLY WHITE

MO 0090